Ridgway Township Municipal Authority, a Pennsylvania Municipal Authority existing under and by virtue of the laws of the Commonwealth of Pennsylvania, Appellant *v.* Exotic Metals, Inc., Appellee.

Argued March 14, 1985, before Judges MacPhail, Barry and Colins, sitting as a panel of three.

*Vernon D. Roof,* for appellant.

*John R. Fernan,* for appellee.

Opinion by Judge MacPhail, April 22, 1985:

This is an appeal by Ridgway Township Municipal Authority (Authority) from an order of the Court of Common Pleas of Elk County in which it found the minimum monthly water rate imposed upon Exotic Metals, Inc. (Exotic) to be unreasonable and formulated a new minimum monthly water rate based on Exotic's current usage. We affirm.

Upon Authority's petition, the trial court entered a Rule to Show Cause why the Authority should not be permitted to terminate water service to Exotic for failure to pay water rental. Exotic filed its answer

and raised new matter, specifically (1) that Authority's monthly minimum charge is discriminatory and without reasonable relation to use and (2) that Authority has double-billed Exotic for certain water services.[1]

The trial court agreed with Exotic's contention that the minimum monthly water rate, as applied to Exotic, was unreasonable. The court found that although Exotic's actual use approximated only 12½ Equivalent Domestic Users (EDU),[2] Exotic was charged for the use of 50 EDUs.[3] The trial court held that the Authority's rate for Exotic constituted a manifest and flagrant abuse of its discretion. The trial court then held that "[a]llowing for the 'value' of the service when available, the minimum monthly charge based on 16 EDUs is more reasonable and proper."

In this appeal, the Authority contends that the minimum monthly rate of $527.00 was reasonable, as is required by the Municipality Authorities Act of 1945, Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. §306B(h). Section 306B(h) provides that:

B. Every Authority is hereby granted, and shall have and may exercise all powers necessary or convenient for the carrying out of the aforesaid purposes, including but without limiting the generality of the foregoing, the following rights and powers:

---

[1] On the issue of double billing, the trial court held that Exotic was entitled to a credit in the amount of $3,588.04, less a deduction of $700.23 for unpaid sewer charges. The Authority did not appeal this portion of the trial court's order.

[2] The rate in effect at the time of Exotic's challenge would indicate that one EDU was equivalent to 4,000 gallons of water.

[3] The Authority charged $527.00 for the minimum monthly rate of 50 EDUs.

. . . .

> (h)  To fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it, for the purpose of providing for the payment of the expenses of the authority, the construction, improvement, repair, maintenance and operation of its facilities and properties . . . .

Our scope of review is limited to whether there has been a manifest abuse of discretion or an arbitrary establishment of the rate system by the provider. *Patton-Ferguson Joint Authority v. Hawbaker,* 14 Pa. Commonwealth Ct. 402, 322 A.2d 783 (1974). As was the trial court, we are mindful of the fact that judicial discretion may not be substituted for administrative discretion. *Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 109 A.2d 331 (1954). The burden is on Exotic to prove that the Authority had abused its discretion by establishing a rate system which is unreasonable. *Patton-Ferguson.*

In its attack on the reasonableness of the rate in relation to the service rendered, Exotic's president, Robert V. Howard, testified that the sixty-five percent water rate increase to Exotic in 1981 and the fact that the Authority was unable to meet Exotic's increased needs[4] resulting from an expansion in production and work force, prompted Exotic to establish a system of deep wells which, of course, greatly reduced Exotic's consumption of water from the Authority. Howard testified that the $527.00 monthly minimum

---

[4] Joseph Westover, the water superintendent for the Authority during the years in question, testified on cross-examination that if Exotic's needs for water increased, the Authority would not be able to handle the increase without a bigger pump system.

was charged to Exotic on the basis of 50 EDUs despite the fact that Exotic was only using 12½ EDUs.[5]

In determining whether Exotic met its burden of proving that the rate system was unreasonable, we must look not only to the use of the challenge service, but also to its value. "[Water] rental charges, however, must have a reasonable relation to the *value* of the service rendered either as actually consumed or as readily available for use . . . ." *Patton-Ferguson*, 14 Pa. Commonwealth Ct. at 407, 322 A.2d at 786 (emphasis in original). Mr. Howard stated that Exotic realized that the Authority was providing some service and that the fact that Exotic was still connected with the Authority's system had a value to the company in case of breakdown, fire, and for insurance purposes. In consideration of this fact, Howard suggested that Exotic would be willing to be billed on the basis of 16 EDUs.

The Authority argues that Exotic's reduction in usage is compensated for by the Authority's ability to supply Exotic's needs. The Authority also points out if the rate reduction ordered by the trial court is implemented, the Authority's financial base will be in some jeopardy.

While we do not discount the fact that the reduction in rate for Exotic is bound to cause some readjustment in the Authority's financial structure, we must agree with the trial court that Exotic has met its burden of showing that the rate imposed upon it is unreasonable. We likewise agree with the trial court that a charge of 16 EDUs gives adequate consideration to the value of the service the Authority still renders to Exotic. In summary, the trial court's

---

[5] The Authority's engineer testified that Exotic's new rate of $527.00 per month was based upon a consumption of 136,000 gallons. Our own calculation would indicate that this translates to 34 EDUs.

determination that a charge to Exotic based upon 16 EDUs reflects a reasonable relation to both the service rendered as actually consumed by Exotic and as readily available as a back-up system to Exotic, is proper.

Order affirmed.

ORDER

The order of the Court of Common Pleas of Elk County, No. 83-316, dated February 14, 1984, is affirmed.