Edward ACK, Sidney Ackerman, Phyllis Ackerman, Doris Aitken, George Albert, Elaine R. Albert, Ronald Amati et al., Appellants,

v.

**CARROLL TOWNSHIP AUTHORITY.**

Commonwealth Court of Pennsylvania.

Argued June 8, 1995.
Decided July 12, 1995.

Patricia L. Dodge, for appellants.

Michael Yablonski, for appellee.

Before McGINLEY and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Edward Ack, et al., (Appellants) appeal from an order of the Court of Common Pleas of Washington County granting summary judgment in favor of the Carroll Township Authority (Authority), on a complaint filed by Appellants for declaratory judgment and other relief under the Municipal Authorities Act of 1945 (Act).[1]

Appellants are residents of Carroll Township (Township) whose sewage rates are assessed by the Authority. The Authority is responsible for the collection and treatment of sewage in the Township, but it does not own or operate a sewage treatment facility. Rather, it has entered into long-term contracts for the treatment of the Township's sewage with two other authorities, the Municipal Authority of the City of Monongahela (MACM) and the Mon Valley Sewage Au-

---

1. Act of May 2, 1945, P.L. 382, § 1, *as amended,* 53 P.S. §§ 301–401.

thority (MVSA). Pursuant to the terms of the 1971 Agreement between MACM and the Township, there were limitations on the number of gallons per day of sewage that MACM would treat, and separate, higher charges were assessed for any sewage received from the Authority over the maximum established by the agreement. Because of large overrun charges, the Authority engaged in extensive litigation with MACM, resulting in a decision by the Court of Common Pleas of Washington County ordering the Authority to pay more than $1.5 million. Since December, 1990 the Authority has increased the assessment on its customers at a uniform rate to recover the funds necessary to pay the current monthly overrun charges, the judgment to MACM, as well as other related charges, resulting in an increase in each household's sewage bill.

Appellants, residents whose sewage is not treated by MACM, but by MVSA, filed suit claiming that the rates assessed were unreasonable and not uniform. After a period for discovery, Appellants filed a motion for summary judgment, or in the alternative, partial summary judgment, while the Authority filed a cross-motion for summary judgment in their favor. The Honorable George P. Kiester, Specially Presiding, of the Court of Common Pleas of Washington County, by opinion and order, granted the Authority's motion and denied that of Appellants. The trial court held:

> On the facts before this Court, Carroll Township Authority has by clear and convincing evidence established that uniform rates for Equivalent Dwelling Units for all customers within Carroll Township are fair and reasonable. Plaintiffs have failed to answer the expert testimony by affidavit of Edward W. Monroe, an Engineer to Carroll Township since 1968. On the record there is a lack of proof that the Carroll Township Authority has committed a flagrant abuse of its discretion in establishing the uniform rates. The burden of proof rested on Plaintiffs. Plaintiffs failed to prove that Defendant Authority abused its discretion. To the contrary, the record before the Court establishes that the uniform EDU sewage rate within the township is fair and reasonable.

Appellants first argue that the trial court's determination that the imposition of uniform rates on all the Authority's customers was fair and reasonable was based solely on the court's evaluation of the testimonial affidavit of the Authority's engineer, Edward Monroe, regarding the costs associated with servicing the customers in both the MACM and MVSA service areas. This, they argue, was error because it violated the *Nanty–Glo* rule which prohibits the court from relying upon the testimonial affidavits of the party moving for summary judgment. *Nanty–Glo Borough v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932).

Summary judgment is granted only in the clearest of cases, where the right is clear and free from doubt. The moving party has the burden of proving the nonexistence of any genuine issue of fact. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the record must be viewed in the light most favorable to the non-moving party. Pa.R.C.P. No. 1035. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979).

It is well settled that summary judgment is precluded where the moving party relies exclusively upon testimonial affidavits or depositions to establish the absence of a genuine issue of material fact. *Garcia v. Savage*, 402 Pa.Superior Ct. 324, 586 A.2d 1375 (1991). Therefore, testimonial affidavits of the moving party or its witnesses, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the jury. *Curran v. Philadelphia Newspapers*, 497 Pa. 163, 439 A.2d 652 (1981), *citing* 2 Goodrich–Amram 2d, § 1035(b): 4 (1976) at p. 434–435.

However, initially, it must be determined whether a plaintiff has alleged facts sufficient to establish a *prima facie* case. Even assuming everything alleged by a plaintiff is true, and giving the plaintiff the benefit of all reasonable inferences to be drawn from these alleged facts, if a plaintiff has failed to establish a *prima facie* case,

then as a matter of law, summary judgment is proper, because at this stage there are no material issues of fact to be decided. If, however, the moving party has carried its burden, then the rule of *Nanty–Glo* would prohibit summary judgment, if the resolution of material issues of fact is based on testimonial affidavits or depositions, because *Nanty–Glo* requires that such resolution and its concomitant credibility determinations must be left to the province of the jury. *Dudley v. USX Corp.,* 414 Pa.Superior Ct. 160, 606 A.2d 916, *appeal denied,* 532 Pa. 663, 616 A.2d 985 (1992).

Appellants here argue that it was improper for the court to rely on Mr. Monroe's affidavit to determine that there were no genuine issues of fact, because the fact finder must be given the opportunity at trial to assess his credibility, motivation and bias, and determine whether the facts, as stated by Mr. Monroe, were true. Although the trial court, through unartful phrasing, seems to rely solely on the Monroe affidavit to support its grant of the Authority's motion for summary judgment, thus violating the *Nanty–Glo* rule, upon closer scrutiny, we find no application of this rule to the question of the reasonableness of the Authority's assessment of uniform rates for all its customers, because we believe that Appellants failed to make a *prima facie* case.

■ It is the burden of the party challenging a rate structure to prove that there has been a manifest and flagrant abuse of discretion or an arbitrary establishment of the rate system. *Township of Hopewell v. Municipal Water Authority,* 82 Pa.Commonwealth Ct. 134, 475 A.2d 878 (1984); *Kennedy Township v. Ohio Valley General Hospital,* 129 Pa.Commonwealth Ct. 494, 566 A.2d 348 (1990); *Brandywine Homes v. Caln Township Municipal Authority,* 19 Pa.Commonwealth Ct. 193, 339 A.2d 145 (1975). That a court may have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; judicial discretion may not be substituted for administrative discretion. *Patton–Ferguson Joint Authority v. Hawbaker,* 14 Pa.Commonwealth Ct. 402, 322 A.2d 783 (1974).

■ We have held that sewage rates must have a reasonable relation to the value of the service rendered *either as actually consumed or as readily available for use. Id.* In order to be assessed sewer rental fees, an individual sought to be charged must obtain "some" benefit. *Kennedy Township.* Thus, for example, in *Turley v. North Huntingdon Township Municipal Authority,* 5 Pa.Commonwealth Ct. 116, 289 A.2d 509 (1972), we held that it was not an abuse of discretion to charge old customers to finance the construction of a sewage collection system to serve new customers, because the old customers benefitted from the system. Conversely, it was held in *Hamilton's Appeal,* 340 Pa. 17, 16 A.2d 32 (1940), that where a rate schedule based on property assessment had charged rents to vacant lots and buildings which were not connected to the sewer system, the rates were unreasonable because the sewer system conferred no benefit on the owners of the property.

Moreover, in *Brandywine,* we upheld a uniform rate increase to pay for expansion of sewage system into a previously unserviced sector of the township. We held, quoting the trial court:

Here, the decisions of the governing body were made after much study and with care. The revenues and expenditures have been carefully estimated. For this court to set aside the rentals as unreasonable ... would be for this court to inquire into the wisdom of the action of township in embarking on the expansion of its sewer system. This a court will not do.

*Brandywine,* 19 Pa.Commonwealth Ct. at 200, 339 A.2d at 149.

More recently in *Kennedy Township,* we reversed the trial court and held that it was reasonable to assess a hospital for the cost of a new sewer system to which the hospital was not directly connected. We held that where the municipal authority has the responsibility to repair, maintain and operate an interconnected sewer system, of which the hospital was part, while it may be true that the hospital received no direct benefit from the EPA project additions to the system, it received "some" benefit from the system generally and thus, the imposition of a uni-

form rate increase to pay for the expanded system was reasonable and not an abuse of discretion.

■ Here, Appellants cannot contend that they receive no benefit from the system operated by the Authority which must maintain, repair and service the system throughout Carroll Township. Instead, Appellants complained that their assessment should not be increased to pay for charges incurred by the Authority relative to the MACM sewage system, when they are not served by MACM, and thus the uniform assessment was unfair and unreasonable. However, as the cases cited above show, the sewage rates need not be proportioned with exactness to the use made or the cost to the individual customer, so long as it reasonably related to the cost of maintaining the service for all the customers, and the customers challenging the rates receive "some" benefit from the system. Under these circumstances, we will not question the wisdom of the Authority's decision to charge a uniform rate to all its customers.

Even when viewing the facts alleged by Appellants in the light most favorable to Appellants, and disregarding the Monroe affidavit, we hold that Appellants failed to establish their *prima facie* case that the uniform sewage charge for all the Authority's customers was unreasonable. Since there are no credibility issues to be decided when determining if there are allegations sufficient to support a *prima facie* case, the rule of *Nanty–Glo* is not a consideration, and therefore, as a matter of law, the Authority was entitled to summary judgment. *See, Dudley v. USX Corp.*

■ Appellants next contend that the trial court only decided that the imposition of uniform rates on all residential customers was reasonable, but failed to analyze or respond to their claim that the amount of the assessment was unreasonable for other reasons. They argue that genuine issues of material fact exist regarding the reasonableness of certain components of the Authority's rates, apart from their uniformity, and therefore, as to these matters, summary judgment was improper.

Appellants note that in a letter sent to all Carroll Township Residents from the Authority the charges for each resident would consist of:

| Item | Monthly Cost |
|---|---|
| Operation, Maintenance & Sewer Treatment | $32.41 |
| Corrective Action Plan | 3.00 |
| Court Judgment | 5.00 |
| E.P.A. Repayment | 3.19 |
| Current MACM Penalties | 0.00 |
| Interest on Current MACM Penalties | 0.00 |
| | $43.60 |

(R.R. 526a.)

Appellants first deny the reasonableness of the $5.00 per month assessment against all Authority customers as the result of the court judgment against the Authority for failure to pay overrun fees. Appellants claim that since none of their sewage was processed by MACM during the period when overruns were not paid, and since none of their sewage contributed to the overruns, such assessment was unreasonable.

We hold that Appellants' contention regarding the assessment of $5.00 per month for the court judgment is without merit. It is nothing more than a renewal of their argument that they should not be charged for the costs of the MACM sewage drainage system and the related unsuccessful litigation against MACM regarding overrun charges. It is not within our province to question the wisdom of the Authority's decision to litigate the sewage contract with MACM, and since Appellants are only, under another guise, challenging the uniform imposition of rate increases on customers not served by MACM, we hold, for the reasons stated above, that the Authority's decision to spread the cost of the judgment over all its customers and charge a uniform rate was reasonable. Therefore, summary judgment was proper.

Appellants next claim that $3.00 per month assessed to each resident for a "corrective action plan" was arbitrarily imposed at the insistence of MACM, and without any independent analysis by the Authority, and solely to facilitate a settlement which did not occur. They also contend that the assessment of $3.19 per month in 1991 to reimburse an

overpayment to Carroll Township by the Environmental Protection Agency (EPA) is unreasonable because more than sufficient funds have already been collected to repay this obligation in full. The trial court did not address these arguments in its opinion, although these issues arose in the course of discovery and were raised in the summary judgment motions. (R.R. at 199a–200a, 205a–207a, 267a–307a, 308a–335a, 336a–356a.)

In *Township of Hopewell,* the issue was whether the authority abused its discretion in increasing its rates to reflect a capital improvement plan mandated by the EPA. We found that many of the projects had not been planned or started, and given that the court must be furnished with all the data used in establishing the rates, we held that the evidence reveals that the construction was speculative, and its cost was not available at the time of the rate increase.[2] Moreover, in *Ridgway Township Municipal Authority v. Exotic Metals Inc.,* 88 Pa.Commonwealth Ct. 637, 491 A.2d 311 (1985), we affirmed the trial court's decision that the minimum monthly water rate, as applied to Exotic, was unreasonable, and therefore the Authority's rate for Exotic constituted a manifest and flagrant abuse of its discretion. Exotic was being charged the equivalent of 50 Equivalent Domestic Users (EDU's), while the court, after trial, found that Exotic's actual use only approximated twelve and one half (12½) EDU's. In our review of the trial court's decision, we noted, citing *Patton–Ferguson,* that water rental charges must have a reasonable relation not only to the value of the service rendered, as measured by actual consumption, but also to the value of service readily available for use. On this basis we affirmed the modified rate imposed by the trial court. In both of these cases, the conflicting evidence was scrutinized by the trial court with some detail to determine whether there was an arbitrary establishment of the rate system, which, if found, would constitute a manifest abuse of the discretion vested in the respective authorities. *Ridgway.*

The Authority argues, pointing to evidence in the record, that contrary to Appellants' claims that the corrective action plan grew out of failed negotiations with MACM, the plan was first developed in 1983, and updated in 1991 and 1993. It also argues that the amount collected for EPA repayment was reasonably based on a projected expenditure, which was later modified, but not in time to be included in the 1992 budget. Here, however, Judge Kiester's opinion does not even address the question of whether the amount assessed for "corrective action" or for the EPA repayment was reasonable or whether it was arbitrarily imposed.

Summary judgment may properly be entered only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. No. 1035(b). Here, the conflicting evidence and the conflicting arguments based on that evidence, clearly show that there are material issues of fact in dispute, and in examining the record in the light most favorable to the Appellants, the non-moving party, questions remain regarding whether these two rates were arbitrarily imposed, and therefore unreasonable, as found in *Hopewell* and *Ridgway.* Evidence must be taken on these issues for resolution by the trial court. We hold that summary judgment was improperly granted on the issue of the reasonableness of the EPA and "corrective action" assessments, and we remand to the trial court for the submission of evidence on these two issues.

Accordingly, we affirm in part and reverse in part the trial court's grant of summary judgment in favor of the Authority, and remand this case to the trial court for proceedings in accordance with the foregoing opinion.

### ORDER

AND NOW, this 12th day of July, 1995, the order of the Court of Common Pleas of Washington County in the above-captioned matter is hereby affirmed in part and reversed in part and the case is remanded for

---

2. Despite our holding, we vacated the trial court's order and remanded stating that the trial court had exceeded its authority by modifying the rate increase without first finding that the authority abused its discretion.

proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.