**Scott Township Sewer and Water Authority v. Ease Simulation**

216

*David J. Tomaine,* for plaintiff.
*John J. Brazil Jr.,* for defendant.

MINORA, *J.,* October 30, 2009—

## I. INTRODUCTION

This case was commenced by Scott Township Sewer and Water Authority (STSWA) for the collection of unpaid charges for water, sewer, and fire protection fees.

Ease Simulation Inc, the defendant, has challenged the fee imposed by STSWA for both water usage and fire protection services. The defendant challenges STSWA's fees on two grounds. The first is whether the rates charged by the STSWA are reasonable as required by the Pennsylvania Municipality Authorities Act? The second is does the STSWA's system provide an appropriate service to the defendant's property in the event of a fire?

The undersigned presided over a one-day non-jury trial on June 25, 2009. The parties have agreed to and submitted a stipulation of facts to the court. The parties have also submitted the deposition of William Karam, and expert reports regarding the fire protection fee. Richard Wilbur was the only witness to testify at the non-jury trial, and he testified on behalf of the defendant. Both parties have provided the court with post-trial briefs. We now consider the matter ripe for disposition and the

rendering of a non-jury opinion as per Pa.R.C.P. 1038. With that in mind, we submit the following.

## II. FINDINGS OF FACT

The findings of facts in this case as determined by the court are supported by the credible, probative and relevant evidence established during the hearing and the submissions of the parties, and accepted as true by the court.

(1) Stipulation of facts by the parties.

(a) The sewer authority's present adopted rate structure and the rate structure in effect at the commencement of this litigation is a "combined rate" which encompasses both water and sewer service and the availability of water for fire protection purposes.

(b) $147.16 of the monthly fee charged by the STSWA represents the fire protection portion of the rate.

(c) The defendant's average monthly water usage for the period of January 1, 2007 through July 31, 2007 was 3,429 gallons per month.

(2) The defendant, Ease Simulations Inc., is being charged a base sewer and water fee rate of $750 per month, which includes the first 20,000 gallons of water used/consumed.

(3) STSWA is providing sufficient amounts of water to meet the water needs of the defendant.

(4) STSWA is able to meet the projected future water needs of the defendant if they were to increase.

(5) STSWA's fire protection system is fully functioning. Expert report of Dennis Kutch P.E.

(6) STSWA's fire hydrants locations, while not ideal, do not disqualify them from providing the defendant with adequate fire protection.

(7) STSWA's fire hydrants meet the standards required to provide fire protection to the defendant.

## III. LEGAL ISSUES

This case involves two legal issues. The first is whether the rates charged by the STSWA are reasonable as required by the Pennsylvania Municipality Authorities Act? The second is does the STSWA's system provide an appropriate service to the defendant's property in the event of a fire? Each of these issues will be addressed individually in the subsequent analysis.

## IV. LEGAL ANALYSIS

*Section 5607(d)* of the Municipality Authorities Act states:

"(d) Powers.—Every authority may exercise all powers necessary or convenient for the carrying out of the purposes set forth in this section, including, but without limiting the generality of the foregoing, the following rights and powers:

"(9) *To fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it for the purpose of providing for the payment of the expenses of the authority,* the construction, improvement, repair, maintenance and operation of its facilities and properties and, in the case of an authority created for the purpose

of making business improvements or providing administrative services, a charge for such services which is to be based on actual benefits and which may be measured on, among other things, gross sales or gross or net profits, the payment of the principal of, and interest on, its obligations and to fulfill the terms and provision of any agreements made with the purchasers or holders of any such obligations, or with a municipality and to determine by itself exclusively the services and improvements required to provide adequate, safe and reasonable service, including extensions thereof, in the areas served. . . ." (emphasis added) 53 Pa.C.S. §5607(d)

"Section 5607(d) of the Municipality Authorities Act requires that a municipality's rates be 'reasonable and uniform.' 53 Pa.C.S. §5607(d). This standard mandates that rates be reasonably proportional to the value of the service rendered. *Hamilton's Appeal,* 340 Pa. 17, 16 A.2d 32 (1940); *Township of Kennedy v. Ohio Valley General Hospital,* 129 Pa. Commw. 494, 566 A.2d 348 (1989) (sewer system rates based strictly upon consumption were equitably proportioned); *Brandywine Homes v. Caln Township Municipal Authority,* 19 Pa. Commw. 193, 339 A.2d 145 (1975) (was not an abuse of discretion for Township to set a minimum quarterly rate for each private home for that home's use of sewage collection facilities)." *Western Clinton County Municipal Authority v. Estate of Rosamilia,* 826 A.2d 52, 57 (Pa. Commw. 2003).

The Pennsylvania Commonwealth Court, in *Allegheny Ludlum Corporation v. Municipal Authority of Westmoreland County,* 659 A.2d 20, 26 (Pa. Commw. 1995), articulated the standard of review for a challenge to a

municipal authorities rate structure. The Commonwealth Court stated:

"In deciding whether a rate is reasonable, the trial court's scope of review is limited to determining whether there has been *a manifest and flagrant abuse of discretion or an arbitrary establishment of the rate system.* ... The party challenging the validity of the rate has the burden of proving that it is unreasonable. . . . Whether a rate is reasonable is dependent upon whether it is reasonably proportional to the value of the service rendered. ... 'That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; judicial discretion may not be substituted for administrative discretion.'" (citations omitted) (emphasis added)

### A. *Whether the Rates Charged by the STSWA Are Reasonable As Required by the Pennsylvania Municipality Authorities Act?*

In determining whether a user met its burden of proving that water rate system was unreasonable, court was bound to look not only to the use of the challenged service, but also to its value, there being a requirement of reasonable relation to value of service rendered either as actually consumed or as readily available for use. *Ridgeway Township Municipal Authority v. Exotic Metals Inc.,* 88 Pa. Commw. 637, 641, 491 A.2d 311, 313 (1985), see also, *Washington Realty Co. Inc. v. Municipality of Bethel Park,* 937 A.2d 1146, 1149-50 (Pa. Commw. 2007).

"[R]ates need not be proportioned with exactness to use made or the cost to the individual customer, so long

as it is reasonably related to the cost of maintaining the service for all the customers, and the customers challenging the rates receive 'some' benefit from the system." *Ack v. Carroll Township Authority,* 661 A.2d 514, 518 (Pa. Commw. 1995). The mere fact that a parcel of property is connected to a sewage system provides value to the premises. *Washington Realty Co. Inc.,* 937 A.2d at 1149.

It is the conclusion of this court that STSWA's rate structure is reasonable. The defendant, Ease Simulations Inc., is being charged a base sewer and water fee rate of $750 per month, which includes the first 20,000 gallons of water used/consumed, and the defendant only uses on average 3,429 gallons of water per month.

In *Ridgway,* the Commonwealth Court upheld a decision by the lower court finding that the base rate charged by the municipal authority was unreasonable. 88 Pa. Commw. 637, 491 A.2d 311. In that case the municipal authority set its base rate at 50 EDUs (a measurement of usage, 1 EDU equaled 4,000 gallons). The record showed that the user's average monthly usage was 12 1/2 EDUs. In that case the trial court determined the base monthly rate was unreasonable and ordered the base monthly rate be set at 16 EDUs. The Commonwealth Court upheld the trial court's order and reasoning. *Id.*

In the *Ridgway* case, prior to the rate reduction by the trial court, the user was using 25 percent of the water they were being charged for in the base rate, 12 1/2 is 25 percent of 50. After the rate reduction by the trial court, the user was using 78.125 percent of the water they were being charged for in the base rate, 12.5 is 78.125 percent of 16. In the present case the defendant is using 17.145

percent of the water they are being charged for in STSWA's base rate, 3,429 is 17.145 percent of 20,000. At first glance STSWA's base rate appears to be unreasonable, based on the *Ridgway* figures, but the *Ridgway* case is clearly distinguishable.

As the *Ridgway* case states, the court is bound to look not only to the use of the challenged service, but also to its value, there being a requirement of reasonable relation to value of service rendered either as actually consumed or as readily available for use. 88 Pa. Commw. at 641, 491 A.2d at 313. The trial court in *Ridgway* decided the rate was unreasonable based on the fact that the municipal authority was not the primary service provider (the user was because they had to drill their own system of deep wells), and that the municipal authority had not been able to maintain sufficient volume nor uninterrupted service. The trial court found the service rendered by the municipal authority to be supportive and standby in nature, and therefore determined that a base rate of 16 EDUs was more reasonable and proper.

In the *Ridgway* case, the municipal authority was not able to meet the water needs of the user, which prompted the user to install a system of deep wells which decreased the user's consumption of water. Further, the Commonwealth Court noted that if the water needs of the user increased in the future the authority would not be able handle this increase without a "bigger pump". 88 Pa. Commw. at 640 n.4, 491 A.2d at 313 n.4.

Therefore, the *Ridgeway case is* distinguishable from the case sub judice. STSWA is the primary and only provider of sewer and water service to the defendant. It has not been alleged or proven that the STSWA is unable

to handle an increase in water consumption by the defendant. When taking into consideration the use, water actually consumed, and the value of the readily available services, as well as the sewage service and availability of fire suppression, it is the conclusion of this court that the base rate charged by STSWA is reasonable.

STSWA is providing the defendant with a sufficient amount of water to meet their present needs and has the ability to continue to provide increased volumes of water to the defendant if their future needs increase. The case law directs us to analyze not only the water being consumed by the user but the water potentially available to the user. As such, we conclude there is not manifest abuse of discretion and therefore the water and sewer rate charged by STSWA is reasonable and uniform as required by 53 Pa.C.S. §5607(d) of the Municipality Authorities Act.

### B. Does the STSWA's System Provide an Appropriate Service to the Defendant's Property in the Event of a Fire?

One element of the sewer and water fee charged by STSWA to the defendant is a fire protection fee. The defendant has challenged the reasonableness of this fire protection fee, which is $147.16 of the base monthly rate of $750. The defendant has challenged the reasonableness of this fire protection fee on the ground that the tire protection infrastructure is not readily available to the defendant.

The defendant presented evidence through the testimony of Richard Wilbur (an employee and minority shareholder of Ease Simulations Inc.) and an expert re-

port of David Wilbur. The gist of this testimony was that the two fire hydrants, which STSWA has stated would be used to prevent or contain a fire in the event that one occurred, are inadequate for the job and unreasonably located so that they could not be utilized by emergency crews. Further David Wilbur, defendant's expert and a firefighter, concludes that the large pond located directly across from the defendant's building should be the preferred fire suppression water source, indicating that none of the fire hydrants would need to be used.

However, the contradictory expert reports of Dennis Kutch, P.E. indicate that the system is fully functioning and that the location of the fire hydrants are acceptable. He indicates that the system would adequately provide fire protection to the defendant.

It is the conclusion of this court that the fire protection fee is reasonable. The fire protection infrastructure is readily available to the defendant and would adequately provide fire protection to the defendant. The fact that the defendant feels there would be a better or less expensive system which could be utilized is irrelevant, as the system in place and service provided by STSWA is fully functioning and capable of performing its designated purpose.

## NON-JURY VERDICT PER PA.R.C.P. 1038

And now, October 30, 2009, the following non-jury verdict is rendered pursuant to Pa.R.C.P. 1038:

Judgment is hereby entered in favor of the plaintiff, The Scott Township Sewer and Water Authority of Scott Township, and against the defendant, Ease Simulation Inc. d/b/a Ease Diagnostics, in the amount of $16,800.