**THE SCOTT TOWNSHIP SEWER AND WATER AUTHORITY and Scott Township**

**v.**

**EASE SIMULATION, INC. d/b/a, Ease Diagnostics, Appellants.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 23, 2010.

Decided Aug. 6, 2010.

John J. Brazil, Jr., Scranton, for appellants.

David J. Tomaine, Archbald, for appellee, the Scott Township Sewer and Water Authority.

BEFORE: LEADBETTER, President Judge, and BROBSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Ease Simulation, Inc. d/b/a, Ease Diagnostics (Ease) appeals from an order of the Court of Common Pleas of Lackawanna County (trial court), which entered judgment in favor of The Scott Township Sewer and Water Authority and Scott Township (collectively, Authority) and ordered Ease to pay $16,000.00 in unpaid charges for water, sewer and fire protection. We affirm.

The Authority instituted this action for the collection of unpaid charges for water, sewer and fire protection. Ease challenged the fee imposed by the Authority, claiming it was unreasonable. The parties submitted a stipulation of facts, an expert's report and also presented witness testimony at the non-jury trial.

The trial court determined that the Authority adopted a rate structure which encompasses both water and sewer service and the availability of water for fire protection purposes. Of the monthly fee charged by the Authority to Ease, $147.16 represents the fire protection portion of the rate. The Authority charges Ease a base sewer and water rate of $750.00 per month, which includes the first 20,000 gallons of water used/consumed. Ease's average monthly water usage for the period of January 1, 2007 through July 31, 2007 was 3,429 gallons per month. The Authority is providing sufficient amounts of water to meet the needs of Ease and is able to meet the projected future water needs of Ease, if they were to increase.

In addition, the Authority's fire protection system is fully functioning. The Authority's fire hydrant locations, while not ideal, do not disqualify them from providing Ease with adequate fire protection and the fire hydrants meet the standards required to provide fire protection to Ease.

The trial court concluded that the rate charged by the Authority is reasonable, that the Authority's system offers appropriate service to Ease's property in the event of a fire and ordered Ease to pay the Authority $16,000.00 in unpaid charges for water, sewer and fire protection. This appeal followed.[1]

Initially, the first issue we address is whether the rates charged by the Authority are reasonable as required by the

---

1. Our review of a trial court decision as to whether an authority's utility rate is reasonable is limited to determining whether the findings are supported by substantial evidence and whether the law was properly applied to the facts. *Allegheny Ludlum Corporation v. Municipal Authority of Westmoreland County,* 659 A.2d 20 (Pa.Cmwlth.1995).

Pennsylvania Municipal Authorities Act (Act), 53 Pa.C.S. §§ 5601–5623. In accordance with 53 Pa.C.S. § 5607 an authority has the following power:

> **(d) Powers.**–Every authority may exercise all powers necessary or convenient for the carrying out of the purposes set forth in this section, including, but without limiting the generality of the foregoing, the following rights and powers:
>
> \* \* \*
>
> (9) To fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it for the purpose of providing for the payment of the expenses of the authority, the construction, improvement, repair, maintenance and operation of its facilities and properties. . . .

This court, in *Allegheny Ludlum,* addressed the reasonableness of rates stating:

> In deciding whether a rate is reasonable, the trial court's scope of review is limited to determining whether there has been a manifest and flagrant abuse of discretion or an arbitrary establishment of the rate system. . . . The party challenging the validity of the rate has the burden of proving that it is unreasonable. . . . Whether a rate is reasonable is dependent upon whether it is reasonably proportional to the value of the service rendered. . . . Judicial discretion may not be substituted for administrative discretion.

*Id.* 659 A.2d at 26. (Citations omitted.)

■ In addition, in determining whether a user has met its burden of proving that the water rate system was unreasonable, a court is bound to look not only to the use of the challenged service, but also to its value. *Ridgway Township Municipal Authority v. Exotic Metals, Inc.,* 88 Pa. Cmwlth. 637, 491 A.2d 311 (1984). The mere fact that a parcel of property is connected to a sewage system provides value to the premises. *Washington Realty Company, Inc., v. Municipality of Bethel Park,* 937 A.2d 1146 (Pa.Cmwlth.2007), *petition for allowance of appeal denied,* 599 Pa. 684, 960 A.2d 457 (2008).

Ease claims that the Authority has set a monthly minimum usage of 20,000 gallons. Ease maintains that it only uses 3,429 gallons per month and argues that it, therefore, subsidizes all other users in the system. According to Ease, it pays significantly more per gallon than other users in Scott Technology Park. Ease identified other companies within Scott Technology Park and determined that based on their water usage Clavert pays .013¢ per gallon of water, Process Technology pays .016¢, Clavert # 2 pays .021¢, Herf Jones pays .032¢ and Ease pays .219¢ per gallon of water. Ease argues that it is paying between 400% and 800% more for a gallon of water than any of the other users in Scott Technology Park and that such rate constitutes an unreasonable fee.

Ease relies on *Ridgway,* wherein the authority charged $527.00 for the minimum monthly rate of 50 EDUs.[2] Exotic's actual use was 12½ EDUs. Testimony was also presented that the authority was unable to meet Exotic's water needs resulting from an expansion in production and work force, prompting Exotic to establish a system of deep wells. Further, if Exotic's water needs were to increase, the authority would not be able to handle the increase without a bigger pump.

This court agreed with the trial court's determination that Exotic met its burden of showing that the rate imposed upon it

**2.** Equivalent Domestic Users.

was unreasonable. The authority was not able to meet Exotic's present or future water needs, resulting in Exotic having to build a system of wells and thereby reducing Exotic's water consumption from the authority.

The facts in this case are contrary to those in *Ridgway*. First, this case is not simply a water rate case but includes, water, sewage and fire protection. Also, unlike *Ridgway*, the Authority is the only source of water and sewer service. Moreover, Ease does not allege that the Authority is incapable of meeting its present or future water needs. In fact, the trial court determined that the Authority is providing Ease with sufficient amounts of water to meet Ease's present needs and has the ability to continue to provide increased volumes of water if future needs increase.

■ We agree with the trial court that although Ease may be paying more for service than its neighbors, such does not make the rate unreasonable. "[R]ates need not be proportioned with exactness to use made or the cost to the individual customer, so long as it is reasonably related to the cost of maintaining the service for all the customers, and the customers challenging the rates receive 'some' benefit from the system." *Ack v. Carroll Township Authority*, 661 A.2d 514, 518 (Pa. Cmwlth.1995), *petition for allowance of appeal denied*, 543 Pa. 731, 673 A.2d 336 (1996). "In *Central Iron & Steel Co. v. Harrisburg*, 271 Pa. 340, 114 A. 258 (1921), the Supreme Court recognized that a city ordinance may fix a minimum payment for customers who desire to be placed in a 'position to take advantage of the service at their convenience, whether actually using the water or not.'" *Western Clinton County Municipal Authority v. Estate of Rosamilia*, 826 A.2d 52, 57 (Pa.Cmwlth. 2003). Here, the Authority is providing Ease with sufficient water, sewage and fire protection to meet its present and future needs and Ease has failed to prove that the rate charged by the Authority to provide such service was unreasonable.

■ Finally, Ease argues that it should not be required to pay the fire protection fee because the fire protection infrastructure is not readily available to it. Ease points out that when the Scott Technology Park was formed and the infrastructure installed, the building which Ease occupies was not part of Scott Technology Park. Ease maintains that its expert, Rick Wilbur, who is the brother of a shareholder of Ease, testified that the two fire hydrants located near Ease's property are in fact not available to Ease. Specifically, one of the hydrants, located more than five hundred feet from the building, is also thirty to forty feet down an embankment, off a road in a wooded area that is not visible and at times during inclement weather, is also inaccessible. The other hydrant is located three hundred and fifty feet away and access to it is through a woody, marshy area.

In contrast to the evidence presented by Ease, the report prepared by Dennis Kutch, P.E. (Kutch) indicated that the system is fully functioning and would adequately provide fire protection to Ease. Additionally, the placement of the fire hydrants is acceptable.

■ It is within the province of the trial court when acting as fact finder, to weigh conflicting testimony, determine credibility and resolve conflicts in the evidence. *Allegheny Ludlum*. Here, the trial court accepted the testimony of Kutch and concluded that the fire protection infrastructure is readily available to Ease and would provide adequate fire protection. Ease's argument that the trial court should have relied on its expert is without merit.

In accordance with the above, the decision of the trial court is affirmed.

### ORDER

Now, August 6, 2010, the order of the Court of Common Pleas of Lackawanna County, in the above-captioned matter, is affirmed.